IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Kemo D. Whirl (B-55932),　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)　Case No. 17 C 0926
　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　Judge Philip G. Reinhard
Nurse Practitioner Susan Tuell,　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　)

## ORDER

For the reasons set forth below, defendant's motion for summary judgment [73] is granted. Plaintiff's motion for leave to reply to defendant's reply [85] is granted. This case is terminated.

## STATEMENT-OPINION

### I.　Procedural History

Whirl, a proficient litigant, has accumulated three strikes within the meaning of 28 U.S.C. § 1915(g)[1] and may not initiate federal civil lawsuits or appeals without prepaying the applicable filing fees. (*See* [58], pg. 3 n.1, pg. 5 (discussing Whirl's litigation history, accumulation of strikes, and payment status.)) Whirl brought this case in the Circuit Court of Marion County, Illinois and was granted leave to proceed *in forma pauperis* in the state court. ([1].) Defendant paid a federal filing fee and removed the case to the District Court for the Southern District of Illinois, from which it was transferred twice, first to the District Court for the Northern District of Illinois, Eastern Division, and then intra-district to the Western Division. ([1], 16, 21-24.) Defendant moved for judgment on the pleadings, arguing that Whirl's medical negligence claims should be dismissed and that his struck-out status barred him from proceeding in federal court. ([42].) The court granted defendant's motion as to any medical negligence claims but denied the remainder of the motion, although warning Whirl to avoid vexatious conduct, disclose his strikes and litigation history, and pay the filing fees he has incurred. ([58].)

### II.　Northern District of Illinois Local Rule 56.1

---

[1] *Whirl v. Lyons*, No. 02 C 4324 (N.D. Ill.) (Shadur, J.) (dismissed on June 25, 2002, for failure to state claim on which relief may be granted); *Whirl v. Randle*, No. 2:10-cv-02222-MPM-DGB (C.D. Ill.) (McCuskey, J.) (dismissed for failure to state claim on which relief may be granted on October 26, 2010); *Whirl v. IDOC*, 2:10-cv-02239-HAB-DGB (C.D. Ill.) (Baker, J.) (dismissed on May 9, 2011, for failure to state claim on which relief may be granted). In each dismissal order, Whirl was warned that he had accumulated a strike; Whirl has since been warned of his three-strikes status. *See Whirl v. Wexford Health Sources, Inc.*, 14 C 50363 (N.D. Ill.) (Kapala, J.) (denying Whirl leave to proceed *in forma pauperis* due to his accumulation of three strikes); *Whirl v. TransUnion*, 15 C 50141 (N.D. Ill.) (Kapala, J.) (dismissing case on July 8, 2015, for Whirl's failure to notify court that he had accumulated three strikes).

Whirl is proceeding *pro se*.[2] Thus, in addition to summary judgment motion and supporting memorandum ([73], [74]), defendant filed a Northern District Local Rule 56.1 statement of uncontested facts ([75]) and served Whirl with a copy of LR 56.1 ([76]) and a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment." ([77].) Those documents explain how to respond properly to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1. Under LR 56.1, a moving party must provide "a statement of material facts as to which [it] contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. L.R. 56.1(b)(3)(B)); (*see* [76].)

In response to defendant's statement of facts ([75]), Whirl filed a 15-page document entitled "Plaintiff's Statement of Disputed and Undisputed Material Facts in Opposition of Motion for Summary Judgment," which appears to refer to exhibits included in "Plaintiff's Response in Opposition to Defendant Tuell's Motion for Summary Judgment." ([82]; [80], pgs. 5-101.) Whirl also submitted a "Memorandum of Law in Support of His Opposition to Defendant Tuell's Motion for Summary Judgment." ([81].) He later filed a "Motion for Leave to Reply to Defendant Tuell's Reply in Support of Summary Judgment" ([85]), along with a proposed sur-reply (entitled a declaration). ([86].) Whirl's motion for leave to file is granted.

The court will not, as both parties request ([83], pg. 1; [86], pg. 3), wholly disregard the other party's response or reply. Because Whirl is proceeding *pro se*, the court has interpreted his submissions generously and will construe them as favorably as the record and Local Rule 56.1 permit, to the extent that he has pointed to admissible evidence in the record or could properly testify himself about the matters asserted. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602, 701, 702. The court will not, however, dig through the record to identify disputed issues of fact or support for otherwise unsupported factual assertions. *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 744 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies."). Moreover, Whirl cannot create genuine issues of material fact by relying upon legal arguments, conclusions or suppositions (*see,*

---

[2] According to PACER case locator, Whirl has been a party in more than a dozen federal cases and several appeals. After removal of this case to federal court, he requested attorney representation ([10]), and the court denied the motion, reasoning that he had demonstrated an ability to research and respond cogently to the complex legal arguments defendant raised in her motion for judgment on the pleadings. ([58], pgs. 10-11.) His filings also demonstrated his intelligence, communication skills, and general competency to litigate, comprehend and follow court orders, and to identify and respond to pertinent factual and legal issues. (*Id.*) The court encouraged Whirl to continue to seek legal representation on his own. (*Id.*, pg. 11.) The court later denied Whirl's renewed motion for counsel due to his three-strikes status and because he continued to demonstrate his ability to litigate effectively on his own behalf and his claims, while medically-based, did not appear to be overly complex or likely to require the introduction of technical medical records, testimony, or evidence. ([71].) The court reminded Whirl that his submissions would be liberally construed and provided direction regarding seeking additional information from defendant. Whirl's pleadings continue to be thoughtful, well-reasoned, and thoroughly researched.

*e.g.*, last sentences of [82], Pl. Resp. SOF ¶¶ 17, 27), which do not constitute "facts." *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-cv-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (citation omitted).

To the extent Whirl objects to several of defendant's statements of fact because he deems them "irrelevant and immaterial," (*see* Pl. Resp. SOF ¶¶ 3-8, 12, 42), such objections "do[] not serve as a denial under Local Rule 56.1, and therefore serve[] as an admission of the statement." *Ferguson v. Exelon Nuclear*, No. 10 C 113, 2011 WL 1231600, at *1 n.3 (N.D. Ill. Mar. 30, 2011) (citing *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 818 (7th Cir. 2004)). The court thus will consider facts within these statements, where pertinent to the analysis. With these guidelines established, the court turns to the facts.

### III. Facts

State prisoner Kemo D. Whirl, now incarcerated elsewhere, was incarcerated at the Dixon Correctional Center ("Dixon") at the time of the challenged events in late March 2015. ([75], Def. SOF ¶ 1.) Defendant Susan Tuell is an Illinois-licensed Advanced Practice Nurse who works at Dixon Correctional Center as a Nurse Practitioner providing inmates clinical services. (*Id.*, ¶ 2.)

Between December 2, 2014, and March 23, 2015, under an interstate agreement on detainers, Whirl was incarcerated in the Tippecanoe County Jail in Tippecanoe, Indiana. (*Id.*, ¶¶ 1, 13.) On March 23, 2015, Whirl was transported to Dixon. (*Id.*, ¶¶ 1, 13.) Whirl insists that medical records were transferred with him from Tippecanoe (Pl. Resp. SOF ¶¶ 14, 39), but defendant reports that the healthcare unit at Dixon did not receive them. (Def. SOF ¶¶ 14, 39.)[3]

Whirl, who was walking unassisted, had an appointment with defendant upon his intake to Dixon. (*Id.*, ¶ 13.) Whirl had previously been diagnosed with peripheral neuropathy, which causes weakness, numbness, pain, burning, and tingling in the legs, hands, and feet. (*Id.*, ¶ 9; Pl. Resp. SOF ¶ 9.) These symptoms are dissipated with medication. (*Id.*, ¶ 10.) At his intake examination with defendant, Whirl also reported a history of diabetes mellitus and hypertension. (Def. SOF ¶¶ 9, 15.) As is relevant here, defendant prescribed glipizide for Whirl's diabetes and nortriptyline and Naprosyn for any diabetic neuropathic pain he might have and ordered lab work and ongoing monitoring of his blood sugar levels (*id.*, ¶ 16), all of which appear to have occurred as ordered. Defendant's notes reflect that Whirl had "good and full strength" in all extremities and no neurological deficits (*id.*, ¶ 16), although Whirl insists that defendant performed "no testing" or "physical examination" as to those assessments. (Pl. Resp. SOF ¶ 17.)

---

[3] Whirl disagrees, citing his testimony that his escort from Tippecanoe had "turned over a big folder" of records "to a[] [correctional] officer in [] the administration building," just before Whirl was taken to healthcare to meet with defendant. (Pl. Resp. SOF ¶ 14 (citing Def. SOF Ex. A, pp. 47:7-15)). He admits, however, that he had "underst[ood] that [the records were] supposed to go over" to the healthcare unit, but he "didn't pay attention" to whether that occurred. (*Id.* (citing Def. SOF Ex. A, pp. 49:13-21.)) This does not dispute defendant's assertion that she did not have the records during Whirl's intake appointment or afterward.

Medical assessments for low bunk permits for inmates with neuropathy are individualized.[4] (Def. SOF ¶ 41.) Defendant did not order Whirl to be assigned to a bottom bunk, explaining that he did not request one and that, in any case, she did not believe he needed one. (*Id*., ¶¶ 17, 40.) Whirl insists that he both requested a bottom bunk permit and informed defendant that he had had one at the jail in Tippecanoe (Pl. Resp. SOF ¶¶ 34, 40), which, for the purposes of this motion, the court assumes to be true.

Defendant was unaware of Whirl's specific housing assignment or its conditions. (Def. SOF ¶¶ 18, 19, 42, 43.)[5] Following his intake appointment with her, Whirl walked to cell 36 in housing unit 35, where his cellmate had claimed the bottom bunk. (*Id*. ¶¶ 19, 20.) The cellmate refused to cede the bottom bunk to him on his request. (*Id*. ¶ 20.) To reach the top bunk, Whirl stepped on a middle rail connecting the bunks and pulled on the top rail with his arms. (*Id*. ¶ 21.)

On March 27, 2015, Whirl began to climb down from the bunk, miscalculated the placement of his foot on the bottom bunk rail, and slipped onto a screw protruding from a bunk leveler at ground level. (*Id*. ¶ 22.) When he was taken for treatment, a nurse (who is not named as a defendant) cleaned the dime-to nickel-sized circular laceration on the bottom of his right foot and scheduled him for an appointment later that afternoon with defendant Tuell. (*Id*. ¶¶ 23, 25, 31.) Defendant at that appointment documented Whirl's description of the wound's provenance, determined that sutures were unnecessary, and dressed the puncture with a triple antibiotic ointment and gauze, ordering follow-up wound care. (*Id*., ¶ 26.) She did not order Whirl a low bunk permit. (*See id*. ¶¶ 27, 40.) Whirl walked back to his cell following that appointment. (Def. SOF ¶ 28.) He received daily follow-up care for two weeks, and the cut healed without complication. (*Id*. ¶¶ 30, 36.) During this time, he was able to wear shoes, access the top bunk, and walk to and stand in line for meals and medication calls. (*Id*. ¶¶ 28-31.)

On April 8, 2015, Whirl saw defendant for a diabetic lab work follow-up, and she also examined his right foot, finding no evidence of infection, drainage, redness or erythema. (*Id*. ¶ 32.) She did not order the low bunk permit he says he sought. (*See id*. ¶¶ 33, 40; Pl. Resp. SOF ¶ 34.)

---

[4] Without citing record support, Whirl "disputes" this fact, insisting that his "neuropathic condition required a low bunk issuance." (Pl. Resp. SOF ¶ 41.) This unsupported assertion does not show a dispute of material fact as to whether such determinations are individualized. In his legal memorandum, Whirl asserts that it is "protocol" for "a[n] inmate with neuropathy [to] . . . be given a low bunk permit." ([82], pg. 14.) The cited record, which purports to be a 2012 Illinois Department of Corrections Chronic Illness Treatment Guideline for Diabetes, does not mandate a low bunk permit but instead provides for an "[e]valuation" of an inmate's needs "for special placement, program or assignment needs (e.g. low bunk, work restrictions)." ([80], pgs. 64, 66.) This is consistent with defendant's statement of fact.

[5] Citing defendant's answer to part of his complaint, in which she indicates that inmates had generally described to her the in-cell bunk beds, Whirl purports to dispute this fact. (Pl. Resp. SOF ¶ 18 (citing Pl. Ex. 8, [80], pg. 87, ¶¶ 20-21.) But a description of bunk beds does not contradict defendant's statements regarding her lack of knowledge of Whirl's particular cell assignment and conditions. (Def. SOF ¶¶ 18, 19, 42, 43.) Defendant, moreover, specifically disclaimed "knowledge or information [sufficient] to admit or deny" Whirl's specific cell assignment at the time. (Pl. Ex. 8, pg. 87 ¶ 17.) As he provides no evidentiary support, the court will not accept Whirl's unsupported factual assertion as to what defendant knew about his cell assignment. Nor does Whirl provide factual support for his repeated assertions that defendant knew, "from [uncited] medical logs, reports, and incident reports that the cells in the housing units had a litany of safety hazards, including protruding screws." (Pl. Resp. SOF ¶ 43; *see also* ¶ 18.)

Whirl continued to use the top bunk without reported incident. (Def. SOF ¶ 28.) On May 26, 2015, defendant examined Whirl for complaints of hand and foot pain that was not alleviated by the Naprosyn 500 mg, an inability to feel his feet when descending from the top bunk, and his request for lotion. (*Id*. ¶¶ 34, 36.)[6] Defendant prescribed the lotion and an increased dose of nortriptyline and issued Whirl a 6-month permit for the bottom bunk. (*Id*. ¶ 35.)

During his time at Dixon, Whirl went to the yard and to the gym two to three times a week, where he would walk around, play basketball, or work out. (Def. SOF ¶¶ 3, 4.)[7] He walked without assistive devices and stood in meal and medication lines. (*Id*. ¶¶ 5, 6, 11, 13, 19.)

Whirl brought this lawsuit to challenge the non-issuance of a low bunk permit during the beginning of his incarceration at Dixon and was permitted to proceed on a claim that defendant may have been deliberately indifferent to his serious medical needs. ([58].)

## ANALYSIS

There are no outcome-dispositive facts in dispute, and the court concludes that defendant is entitled to judgment as a matter of law. No reasonable trier of fact could find that defendant acted with deliberate indifference to any of Whirl's serious medical needs from his intake to Dixon on March 23, 2015, until he injured his foot on March 27, 2015, which Whirl identifies as the "main issue before this court."[8] ([81], pg. 18.) Defendant contends that Whirl did not have a serious medical need of which she was aware and that her actions were not deliberately indifferent. ([74], pgs. 8-13.) Whirl insists that his diagnosed conditions constitute serious medical needs, that defendant "was aware of a risk of harm to [his] health" posed by climbing to the top bunk and might have foreseen that he could be injured in the absence of a low bunk permit. (*Id*., pgs. 9-18.)

### I.   Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All facts and reasonable inferences are construed in the light most favorable to the nonmovant. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir.

---

[6] Although Whirl purports to dispute defendant's Statement of Fact ¶ 34 "in part," he does not identify or support any dispute with the portions of that statement cited here (Pl. Resp. SOF ¶ 34), and the court accepts them as true.

[7] This is consistent with Tippecanoe records Whirl submitted, in which a correctional officer documented reviewing video footage of Whirl, on January 27, 2015, mopping his cell, walking "numerous laps" of the dayroom, and doing alternating sets of push-ups and jumping jacks, followed by several sets of dips from a handstand position against a wall. ([80], pg. 30.) Whirl explains that he was "exercising as directed by his physician while under medication for his diabetes." ([86], ¶ 11.)

[8] The court accordingly confines its discussion to this interval.

2016). "[I]inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007).

## II.     Whirl's Eighth Amendment Claim

Under the Eighth Amendment, correctional officials are liable "if they are deliberately indifferent to a prisoner's serious medical needs." *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A prisoner claiming deliberate indifference to medical needs "must meet both an objective and a subjective component." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). He must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### A.     Objective Component – Serious Medical Need

Whirl argues that peripheral neuropathy can be painful and that untreated diabetes can be harmful, and he concludes that both are therefore serious medical needs for the purpose of his medical needs claim. ([81], pgs. 10-11 (citations omitted)). Defendant does not dispute that both conditions can constitute serious medical needs but emphasizes that Whirl's conditions were not, as he assumes in making this argument, untreated. Whirl concedes that he was provided with frequent monitoring and medications efficacious enough to enable unassisted vigorous workouts, walking, and standing. ([81], pg. 11; Def. SOF ¶¶ 3-5, 10, 11, 13, 16.) Whirl's focus on the conditions as if untreated is therefore inappropriate. *See Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (holding that medical condition in lawsuit challenging lapse in receipt of medications to treat high blood pressure was not the underlying high pressure but was instead "the medical consequences . . . of a three-week deprivation of [the prescribed] medicine") (citations omitted); *see also Benson v. Bowens*, 740 F. App'x 508, 510 (7th Cir. 2018) (identifying medical condition at issue as "diabetic foot pain"). Whirl does not meaningfully respond to defendant's argument that, with these treatments, at the time he entered Dixon, he was not at serious risk of injury absent his preferred low bunk placement.

Whirl does not describe the symptoms of his conditions (with the range of prescribed treatments he received) that he believes may have posed a serious risk of harm to him in the absence of a low bunk assignment. He required no mobility aids—utilizing no braces, wheelchair, cane, crutches or other assistive devices during his transfer from Tippecanoe to Dixon or from his appointment with defendant back to his cell—and does not describe the extent of any mobility difficulties. (Def. SOF ¶¶ 4-6, 11, 16; [81], pg. 11.) Rather, he concedes that the prescribed medications enabled him to go to the yard and gym several times a week" for 45 minutes to an hour to walk, play basketball, and "work out," and to ambulate unassisted "to and from his housing unit to the cafeteria for three meals, and attend multiple insulin lines each day." ([81], pg. 11; Def. SOF ¶¶ 3-5, 10, 13, 19; [86], ¶ 11.) He "had good and full strength to climb up to the top bunk." ([81], pg. 11; Def. SOF ¶¶ 10, 28.) Given these undisputed facts regarding his physical condition with medications, Whirl has not identified facts from which a reasonable jury might infer an

6

objectively serious risk to him if not provided with his preferred low bunk assignment between March 23, 2015, and March 27, 2015. Defendant is entitled to summary judgment.

**B.     Subjective Component—Defendant's Awareness and Conscious Disregard of Risk**

For the sake of completeness, the court nevertheless will address the subjective component of the deliberate indifference analysis. Even assuming that Whirl had lingering symptoms of diabetes or peripheral neuropathy, not alleviated by the prescribed treatments, that permitted his workouts, yet constituted an objectively serious medical need affecting his ability to safety access the top bunk bed during his intake, defendant was not deliberately indifferent to those needs.

Inmates are not entitled to "unqualified access to healthcare," *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012), or "the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). "A jail or prison official may be found liable only if he knows of and disregards an excessive risk to inmate safety." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (The rule is that an official who should have, but failed, to perceive a significant risk, is not liable.); *see also Palmer v. Franz*, No. 13 C 1698, 2017 WL 4122741, at *5 (N.D. Ill. Sept. 18, 2017) ("Palmer's deliberate indifference claim against [a nurse] requires proof not only that [the nurse] knew of the serious risk of injury but that he 'acted or failed to act in disregard to that risk.'") (citation omitted). Neither medical malpractice, nor negligence or gross negligence rise to the requisite culpable state of mind for deliberate indifference, which is akin to criminal recklessness. *See, e.g., Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

Prison officials are not required to provide inmates with "protect[ion] against all risks"; instead, they must "ensure *reasonable* safety" by protecting against "excessive risks." *Gorbett*, 863 F.3d at 746 (emphasis added). "The risk of injury from a fall onto a concrete floor is obvious, but the chance that someone would fall is not." *Id*. Thus, even if the record contained evidence supporting Whirl's argument that defendant generally knew that inmates have been or may be hurt during falls from a bunk (*see* [81], pgs. 13-14), such evidence would be insufficient, without more, to suggest her awareness during Whirl's intake appointment that he, in particular, had symptoms placing him at a serious risk of falling from a top bunk. *See Gorbett*, 863 F.3d at 746.

Whirl again chiefly argues that defendant should have known, based on his bare diagnoses with diabetes and peripheral neuropathy, of a serious risk to him without a low bunk permit. But, as noted above, an argument that defendant "should have known" is not enough. *Cesal*, 851 F.3d at 721. Whirl agrees that defendant ordered multi-faceted treatments for his conditions (and others he experienced) that were generally effective at alleviating his symptoms and emphasizes that he does not challenge the overall care he received. ([81], pgs. 17-18; Def. SOF ¶ 8, 10.) The record does not reasonably support an inference that defendant knew that, with these treatments and Whirl's unassisted ambulation, at his intake appointment to Dixon, he had a serious risk of injury from fall from an upper bunk.

7

Whirl disagrees, citing *Withers v. Wexford*, 710 F.3d 688, 689 (7th Cir. 2013), for the proposition that "a nurse's refusal to grant a low bunk permit to ani [sic] inmate in imminent danger of falling may constitute deliberate indifference." ([81], pg. 16.) Some courts have identified circumstances from which a reasonable jury might infer that prison personnel knew of a serious risk to an inmate absent a low bunk assignment, such as the failure to provide anti-seizure medication to an inmate assigned to a top bunk, *Phillips v. Jasper County Jail*, 437 F.3d 791, 793, 796 (8th Cir. 2006), notice of an obvious and otherwise untreated deformity causing most of inmate's left hand to be missing, *Palmer*, 2017 WL 4122741, at *5 (finding no deliberate indifference on other grounds), and when, immediately after an inmate complained of the onset of severe back pain and unsuccessfully sought an overnight stay in the prison medical unit, the defendant nurse transported him back to his cell in a wheelchair and told him he would "figure it out" when he complained that he would be unable to access top bunk to sleep. *Withers*, 710 F.3d at 689-90 (noting, however, that these allegations did not "make a conclusive case of deliberate indifference").

Unlike these inmates, Whirl received medications to alleviate the symptoms of his potentially serious medical conditions and identifies no obvious or visible deformities or acute pain or symptoms at the time of his intake to Dixon to put defendant on notice of a serious risk to him, particularly given his unassisted ambulation and activities. Under these circumstances, defendant's treatment of Whirl's peripheral neuropathy and diabetes with medications and frequent monitoring exceeds the constitutional floor of "adequate, minimum-level care," *see Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), despite her decision not to assign him to a low bunk. That decision at best might constitute non-actionable negligence or gross negligence, rather than conduct approaching criminal recklessness. *See Williams v. Meier*, No. 11-CV-407-WMC, 2013 WL 5409058, at *10 (W.D. Wis. Sept. 25, 2013) (holding that "no reasonable jury could find" that physician "responded inappropriately to" risk to diabetic inmate who had had one prior hypoglycemic event and complained of neck and back pain in denying low bunk permit, given overall care and inmate's physical condition at time of request, though he six weeks later suffered hypoglycemic event and fell from top bunk); *see also Thomas v. Wahl*, 590 F. App'x. 621, 624 (7th Cir. 2014) (holding that doctor's failure to schedule follow-up after second shoulder surgery that left prisoner with "visible deformity" in favor of "physical therapy with an exercise band" might "seem under the circumstances to be nonresponsive or negligent" but did not suggest "reckless[ness] in the criminal sense"); *Holt v. McBride*, 539 F. App'x 863, 865-66 (10th Cir. 2013) (holding that doctor's "alleged failure to determine the side effects [such as heavy sleeping and drowsiness inmate experienced due to medications prescribed for neuropathy and HIV infection] d[id] not give rise to an Eighth Amendment claim" regarding inmate's fall from bunk). Neither nurses nor physicians, after all, "practice with a crystal ball in hand." *Sanville v. McCaughtry*, 266 F.3d 724, 736 (7th Cir. 2001).

This conclusion is unaffected by Whirl's insistence that he informed defendant of his low bunk designation at Tippecanoe, which did not obligate defendant to order that he be assigned similarly at Dixon. *See Askew v. Davis*, 613 F. App'x 544, 547 (7th Cir. 2015) (holding that one-year delay in providing "diabetic shoes" prescribed for inmate in two previous prisons did not demonstrate deliberate indifference because "prison medical personnel . . . are not required to defer

8

to a prior doctor's diagnosis"); *Palmer*, 2017 WL 4122741, at *6 ("The mere fact that [an inmate tells a nurse] about a [prior institution issuing] a medical permit. . . does not necessarily mean that [the nurse] was responsible 'on pain of damages' for making sure [inmate] was assigned a low bunk" upon his transfer."). After all, "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Jordan v. Milwaukee County*, 680 F. App'x 479, 481, 483 (7th Cir. 2017) (holding that institutional medical personnel's failure to provide inmate with previously prescribed inhaler and pain medication for first five weeks of incarceration were insufficient to implicate the Constitution, "[a]lthough [both] were subsequently prescribed by a [prison] doctor who saw him, [because] 'evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim.'") (emphasis in original)).

Nor was defendant deliberately indifferent for not ensuring that she received and reviewed his Tippecanoe medical records at his intake appointment, *see e.g.*, *Horn v. Hornbeak*, No. CV F 08-1622 LJO DLB, 2010 WL 1267363, at *19 (E.D. Cal. Mar. 31, 2010) ("[F]ailure to obtain inmate's records is not deliberate indifference.") (citation omitted)), especially given the short time frame at issue here.

Although Whirl is dissatisfied that defendant did not assign him to a bottom bunk upon his entry to Dixon, he has not shown that her decision was a substantial departure from accepted nursing judgment, i.e., that "'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409. *See also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 663-64 (7th Cir. 2016) (affirming summary judgment in favor of prison doctor when prisoner failed to identify evidence showing that challenged treatment decision was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment"); *Holloway*, 700 F.3d at 1073 (rejecting prisoner's argument that prison doctor's choice of different pain medication than prisoner's prior doctor demonstrated deliberate indifference).[9]

For these reasons, defendant is entitled to summary judgment. The court directs the Clerk of Court to enter final judgment. As explained above, Whirl has struck out within the meaning of the Prison Litigation Reform Act, and this case—pertaining to a minor, already healed, injury at a prior place of confinement—does not involve imminent danger of serious physical injury. He therefore is ineligible to appeal *in forma pauperis*. 28 U.S.C. § 1915(g). If he seeks to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment, *see* FED. R.

---

[9] The court's conclusion would not be altered by expanding the focus to include the time between March 28, 2015, and May 26, 2015, when defendant assigned Whirl to a bottom bunk. Defendant between that period apparently knew that Whirl was using the top bunk and had accidentally stepped on an exposed screw in the bed frame but still lacked knowledge of an objectively serious condition affecting Whirl's ability to access his bunk. The court notes that Whirl incurred no injury in that time, which would foreclose the recovery of compensatory damages for any "mental or emotional injury" he might claim from not having a bottom bunk assignment in that time. 42 U.S.C. § 1997e(e). On this record, the court questions whether any damages beyond nominal damages might be available for such a claim.

APP. P. 4(a)(1), which must be accompanied by the full $505 appellate filing fee. If an appeal is found to be non-meritorious, Whirl could be assessed another "strike" under 28 U.S.C. § 1915(g).

Whirl is reminded that he must alert federal courts that he has been assessed three strikes under § 1915(g) when filing a new suit or appeal. *See Ammons v. Gerlinger*, 547 F.3d 724, 725 (7th Cir. 2008) (citing *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999)). Failure to inform any new court of his strikes may result in sanctions. *See Sloan*, 181 F.3d at 859.

## **CONCLUSION**

Plaintiff's motion seeking leave to file a sur-reply [85] is granted. Defendants' motion for summary judgment [73] is granted. The Clerk of Court is directed to enter final judgment and terminate this case.

Date: 01/25/2019                                   ENTER:

*Philip G. Reinhard*

United States District Court Judge

Notices mailed by Judicial Staff. (LC)